18-1061 While in police custody and directly before being interrogated, Petitioner Nicholas Subdiaz-Osorio asked a police officer how he could, quote, get an attorney here. The State does not dispute that these words communicated an unequivocal request for counsel. Instead, the primary point of contention between the parties is that Petitioner used the word here to mean here and now, as in the interrogation proceeding, or there and later, to refer to an as-then unscheduled extradition hearing. While the Wisconsin Supreme Court accepted the there and later reading, that was both unreasonable and contrary to the bright-line rule clearly established in Edwards v. Arizona. Edwards provides that when an individual expresses his desire for the assistance of counsel in an interrogation, all questioning must cease. Indeed, the statement in Edwards explicitly referenced a prior proceeding and was still held to be valid. The suspect in Edwards said, I want an attorney before making a deal. What Edwards does not require, but what the Wisconsin Supreme Court's approach here would impose, is that an individual who asks for counsel in an interrogation state the obvious. They are asking for counsel specifically for that interrogation. These errors, combined with the State Court's independent error of relying on post-invocation context in its analysis, require that this Court reverse the District Court's judgment and grant the petition. Mr. Conroy, do we know who was doing the translation in that Arkansas interrogation room? So the exchange was all in Spanish, and then the exchange was translated from Spanish to English in the State Court. Okay, with Torres and the Officer Torres and the suspect were speaking in Spanish with each other? Correct, Your Honor. And that was recorded, correct? Yes. Okay. Is there a separate transcript somewhere other than this being transcribed during the hearing? Not that I'm aware of, Your Honor. We searched the record and couldn't find anything. I couldn't find one either, so I wanted to make sure. Is the original recording available? Not to our knowledge. We asked the State Court for that recording. We couldn't get it. Okay. Thank you. So, Mr. Conroy, as you know, this isn't a direct appeal, or we're not making these determinations in the first instance. EDPA overlays this. Given the context of what Officer Torres was discussing, namely whether or not he was going to have to go back to Kenosha and the fact that he'd have to have a hearing in Arkansas first, how was it objectively unreasonable for the court to conclude that he was not asking for an attorney for the interrogation part, but rather inquiring about how he would get one for the court proceeding? A few points, Your Honor. First, during the exchange about extradition, there was no mention of an attorney for the extradition hearing. The only prior reference to an attorney in that conversation was when Officer Torres informed the petitioner that he had a right to counsel in the interrogation. And again, Edwards itself provides an example in which a different proceeding is mentioned in the interrogation, and the suspect explicitly references that other proceeding. He says, I want an attorney before making a deal. Notwithstanding that reference to a different proceeding, the Edwards court still credited that invocation as valid. But making a deal is a little different than being in a courtroom, isn't it? Is it unreasonable to presume, if they're talking about a courtroom, that he would want to know if he'd have a lawyer for the court? I think it's contrary to the bright-line rule that Edwards established, in that when a suspect asks for counsel in the context of interrogation, the interrogating officer must credit that invocation as valid. But not if it's ambiguous, right? If it's ambiguous, you don't have to stop. Yes, Your Honor. Davis does provide that if it's ambiguous, you can continue. But Davis was more concerned with situations in which a suspect expressed that he might be interested in counsel, that he, the invocation there was, maybe I should talk to a lawyer, expressing kind of internal doubts about whether the suspect wanted an attorney. The statement here was unequivocal. He asked, how do I get an attorney here because I do not have enough to afford for one? I understood your position to be that it's unequivocal that he wants an attorney, that that's sufficient. And then there may be a distinct set question about, well, what's the scope of that request? And for that, Supreme Court law clearly establishes, in essence, ambiguity has to be interpreted broadly in favor of the suspect, that the officer can't just go forward boldly presuming that he must have meant something else. That's exactly right, Your Honor. Again, because these interrogations oftentimes involve discussions of other proceedings, and it would invite ambiguity in a whole host of different ways. For example, if you ask counsel for a bail proceeding or for a plea bargain, therefore, we're not going to credit this request for counsel. It's also for the protection of the suspects in these interrogations. The Supreme Court has recognized these proceedings to be inherently compelling and antagonistic, and individuals in these proceedings have very few protections. One of the protections is the infirmary right against compelled self-incrimination, and to effectuate that right, when you ask for counsel in an interrogation, even if there is slight ambiguity, which we do not think there is here, the officer should cease questioning, and the state court should suppress any incriminating statements made after the invocation. What do you think the AEDPA overlay does to this? I think that, I think, again— We have to really conclude if we, you know, there's this different formulation, but if you just take Harrington v. Richter, right, which a lot of courts will look at, we basically have to conclude that it's not a fair-minded reading of what transpired here by the Wisconsin Supreme Court, correct? Yes, Your Honor. That said, Edwards and the court have been very clear that the decision established a court where there is some flexibility. It's either unequivocal or it's not, and again, when you compare this statement to the statement in Edwards itself, as well as the statement that other courts, other circuit courts, have credited as unequivocal on habeas, this statement is, in our view, more definitive than those statements. For instance, the Ninth Circuit on an en banc panel on a habeas case credited the statement, there wouldn't be any possible way that I could have a lawyer present while we do this, to be unequivocal. And again, that was on AEDPA review. And just another point before I save time for rebuttal is that, to the AEDPA standard, our other independent argument is that the state court's use of post-invocation context was clearly contrary to the Supreme Court's holding in Smith v. Illinois that any use of post-invocation context was, in other words, intolerable. That the state court relied especially on such context here, we think, provides, again, independent grounds for relief in this case. Thank you very much, Mr. Conroy. For the respondent, Mr. O'Brien. May it please the court. After his arrest in Arkansas, Mr. Subduez-Osario voluntarily and intelligently waived his right, both orally and in writing, to the presence of counsel during custodial interrogation about his brother's murder. Before the interview started, he asked Officer Torres, are you guys going to take me back to Kenosha? Officer Torres then explained to him, no, there is an extradition proceeding that has to take place first here in Arkansas. In response to that, Mr. Subduez-Osario asked, how can I get a lawyer here since I can't afford one? To which Officer Torres responded, don't worry, the state of Arkansas will appoint one before the hearing. Is it correct, Mr. O'Brien, is it correct that in your paraphrase of this, you've left out a reference by Officer Torres to the effect that they were not going to be talking about extradition? Yeah, he said that's not what we're here to talk about or whatever it was, but right at that point in the interrogation is that Subduez-Osario is still curious about what this extradition proceeding is all about, and that's what prompted it, so how can I, you know, if I'm having a lawyer here, how can I afford it? This is right after he voluntarily and intelligently waived his right to counsel for the interrogation where he was told if you can't afford a lawyer under Miranda, then we will still appoint one for you. So it's reasonable, I think Officer Torres honestly and even though he said we're not talking about extradition now, we're here to talk about the murder, that Mr. Subduez-Osario was still interested in what about this extradition proceeding that's coming up here since you guys aren't taking me back to Kenosha. Mr. O'Brien, do you agree that what Mr. Subduez-Osario said did amount to an unequivocal invocation of his right to counsel? That's the way I read your brief at page 29. I think it could be taken as an invocation for purposes of the extradition hearing. I'm not sure even under Davis whether that would even be an unequivocal invocation, but it's a lot closer if we're talking about the extradition proceeding. It's certainly not clear that it's about the extradition hearing, and what troubles me here is the Supreme Court's repeated statements in its jurisprudence to the effect that if there's ambiguity about the scope of the request, that's something the police officer would need to clarify rather than just presume away. Well no, I think I'm relying there on the Barrett case as well as portions of Michigan against Jackson that have not been overruled. But I think Davis is pretty clear that you don't have to ask clarifying questions. You could, but you don't have to, and I think Davis is pretty clear on that. And that as to whether he wants a lawyer. As to whether he wants a lawyer for the interview, and I think it's reasonable for Officer Torias to think that he's number one not revoking his previous waiver of his right to counsel for the interview and clearly invoking his right to the presence of counsel during the interview. And then the trial court accepted Officer, the reasonableness of Officer Torias testimony, and the trial court agreed that this was not a clear unequivocal invocation of the right to counsel for purposes of the interview. Could we focus on the critical passage in the lead opinion for the Wisconsin Supreme Court here? Paragraph 87. At least the way I read this, the pivotal sentence in the analysis of this issue reads, it was reasonable for Officer Torias to assume Subdiaz Osorio was asking about how he could get an attorney for his expertise hearing, especially since Subdiaz Osorio continued to answer questions and remained cooperative for the rest of the interview. You agree that the second half of that sentence is flatly contrary to Smith against my view that that last phrase goes beyond Smith v. Illinois. It's not beyond, it is flatly contrary. Smith called it intolerable, right? I believe so. And that's what the state court especially emphasized. I really have trouble with this, even with the AEDPA overlay. Well I'm not sure that it that that was one of the factors, but it seems to me that it, you know, again looking at the circumstances here that the important, the most critical fact here is the fact that just moments earlier he voluntarily, intelligently waived the presence of counsel and then this all came up before the interview started when they're talking about extradition proceedings. And so even if you support the ultimate conclusion that this was not clearly contrary to United States, to Davis v. United States, that this was a reference, an ambiguous reference to counsel in the context of a discussion about extradition. In fact, it wasn't even a request, it was a question about how do I afford a lawyer? You know, in this context and the officer immediately explaining oh the state of Arkansas will appoint one before your hearing. And Mr. Subbias-Ossorio, presumably satisfied with that, made no other comments, asked no more questions. Officer Torres started asking him about what happened and Mr. Subbias-Ossorio, as he had just agreed to moments earlier, answered, readily answered his questions without an attorney present. And so that enforces the waiver that occurred earlier, regardless of what happened during the interview. So I think it's reasonable, again, I think the district court was correct in saying look, the Supreme Court reasonably applied Davis in that, yes, looking at what the context of this was. What Mr. Subbias-Ossorio asked Officer Torres, how Torres took it, how he answered his question, and then Mr. Subbias-Ossorio's decision to continue with the interview, that that was not clearly contrary to Davis. And again, he could have asked clarifying questions, like do you mean, do you want counsel here now, or don't you? You just said you didn't want counsel. He could have asked that, but Davis says he doesn't have to. And moreover, Mr. Subbias-Ossorio didn't say, wait a minute, why are you asking me about the murder? I just said I wanted, you told me I could have a lawyer here. And he didn't say that. So I think it was reasonable for Officer Torres. That argument you just made is flatly contrary to Smith. Well, I think, again, the discussion ended with Officer Torres telling him, just don't worry about that. The state of Arkansas will appoint a lawyer for you before you go to court. I think that Mr. Subbias-Ossorio, if there was no ambiguity in his mind, would have said no. And he didn't. And I don't know that that's contrary to Smith so much as trying to decipher from things he said later during the interview, retrospectively. But regardless, even if you take that out of the equation, what happened up until that point reflects an ambiguous reference to counsel within the contemplation of Davis, as opposed to an unequivocal request for the assistance of a lawyer. He voluntarily agreed to engage him with the officers after he was told that if you can't afford a lawyer for this interview, we will appoint one. Anyways. And so, again, I think, for Mr. Subbias-Ossorio to prevail here, this court would have to agree with him that Officer Torres was unreasonably wrong, the trial court was unreasonably wrong, the Wisconsin Supreme Court was unreasonably wrong, and the district court was unreasonably wrong. We think that this was reasonable and that the district court was correct to defer to the state court's ruling. Suppose Mr. Subbias-Ossorio had simply said now instead of here. How can I get a lawyer now? Any difference? I think that gets you a lot closer. Here and now. Here and now? Well, yeah, that would be pretty emphatic, I would think. Now would be sufficient? Well, it might be. You know, here's the thing, too, on this thing about here. I refer the court to page 3, note 3 of the district court opinion that's quoting, you know, the judge or the officer, I see my red light is on, can I complete my answer? Please. The officer, Officer Torres, or no, yeah, all right, we're at the suppression hearing and the translator for Mr. Subbias-Ossorio at the suppression hearing is translating the tape recording of the interview. And at that point, you know, initially it's like how do I get a lawyer here since I can't afford one? But he clarified it later and it said, the translator said how can I get a lawyer of and then dashed from here because I can't afford one. And I think that further emphasizes that he's talking about an Arkansas lawyer and it's, again, in context of the appointment of an Arkansas lawyer for the extradition hearing, that there was a preposition to the word here, of or from, and that the Spanish preposition is de, which means of from, and of or from, and so how can I get a lawyer from here in the context of talking about the appointment of a Mr. Conroy, rebuttal? First, the state, as I understand, just conceded that, Fisher said here and now, that would be pretty emphatic. There's no other way to read the question, if not as here and now. He used the present tense, how can I get a lawyer here? It wasn't here in Arkansas or how will I get an attorney here? It was how can I get an attorney here? So we use that as pretty emphatic and sufficient to trigger the protections of Edwards. Mr. Hamilton, you mentioned that you think that, or you characterized the use of post-invocation context as flatly contrary to Smith. We fully agree. The state suggests it might have been harmless and that the analysis might have been the same in any event, but that's not the case. The state only cited to three different factors in its analysis. One was the post-invocation context, which is contrary to Smith. The other was the fact that petitioner signed a waiver of rights form. That's not determinative. In Edwards itself, that case featured a waiver of rights and even still, the court credited the invocation there as valid. And the third factor again was the here, meaning there and later in the state's court's view, which we again think is unreasonable. Under Smith, can the court consider Officer Torres' response after Mr. Subdeas Osorio said, how can I do to get an attorney here because I don't have enough to afford one? Officer Torres responded, if you need an attorney, by the time you're going to appear in the court, the state of Arkansas will get an attorney for you. Can the court consider that statement or would that violate Smith? That would violate Smith, Your Honor, because Smith is, again, emphatic that any statements that come after the invocation cannot be considered for personally casting doubt on the invocation itself. Moreover, we think that the fact that petitioner didn't immediately say, oh, no, how do I get an attorney here for the interrogation? That's not relevant, because that's the officer answered the question by saying, you have the right to counsel at the acquisition hearing, suggested to petitioner that he did not have a right in that interrogation. So that he didn't clarify, I think, is not at all relevant, especially given the compelling and antagonistic forces at play in interrogations. Was Officer Torres right or wrong about a right to counsel in the extradition hearing? Your Honor, I believe, I mean, there's no right to counsel under the Sixth Amendment, but I think that there potentially is a right under Wisconsin law. Or perhaps Arkansas law? Oh, yeah, Arkansas law. Okay, well, okay. All right. Thank you very much, Mr. Conroy. The case is taken under advisement. Our thanks to all counsel. A special thanks to Mr. Conroy and his law firm for the very able assistance you provided your client into the court.